The District Court committed an erroneous interpretation of the law at the beginning of this case when the District Court denied Ms. Kay's motion to augment the administrative record. Had the District Court followed Salama and, based on procedural irregularities, permitted the augmentation of the record, because Hartford changed the rationale of its decision on appeal and prevented Ms. Kay from addressing the new basis and information relied upon, the Court would not have been in the ironic position to chastise Ms. Kay for failing to bring a motion to augment, which he specifically stated in his decision after bench trial. Ms. Kay did, in fact, file a motion to augment at the very beginning of the lawsuit, which was denied by the Court. And indeed, Ms. Kay sought to supplement the administrative record with the precise information that the Court said was missing. And part of the information that Ms. Kay sought to supplement it with was a functional capacities evaluation, which had been ordered by Dr. Dodge in November of 2016 before Hartford denied her decision on appeal. If the Court had allowed the record to be augmented, that information, as well as other information, would have been included. Also, the District Court correctly held that Ms. Kay was disabled, but because of the error that the Court committed at the beginning in not allowing Ms. Kay to supplement the motion to augment, the Court found that although Ms. Kay was disabled from her job, she was not disabled from her occupation. The District Court literally concluded in its decision after bench trial that Ms. Kay's occupation consisted of four duties only, the ability to push, pull, carry, and lift 50 pounds occasionally. The District Court had literally reduced a woman's job that was a clinical specialist who traveled around the country either by car or by plane, training people on advanced laser equipment used in aesthetics for medical treatment. The judge had reduced that occupation to these minimal four duties. The judge, by doing so, basically stripped Ms. Kay of several of her essential duties, which were her long hours that she worked, her travel, assembling equipment, disassembling equipment, training all day for eight hours, and lifting and carrying and pushing. The travel component is a very important component in this case, as well, because one thing that Hartford did in the decision for the first time claimed that when it came to travel, that Ms. Kay could rely on the kindness of strangers in assisting her with the transportation of her bags, her equipment, all of those types of things. And I think that we all know from traveling period how difficult traveling really is, and getting shuttles and rental cars and getting on and off planes and all of those types of things, and to disseminate it down to simply say that she can get help from other people is just, it's really, really unreasonable. Also, the district court should have recognized that Hartford did not evaluate Ms. Kay's occupation correctly. The starting point to evaluate Ms. Kay's occupation should have been to look at her occupation first, what were her actual duties that she did, and then they could look to see whether or not her occupation was performed differently in the general workplace. And in this instance, Hartford did not one time determine whether or not Ms. Kay's occupation was performed in any different manner than it was typically performed in the general workplace. Instead, what Hartford did under the guise of looking at her occupation, they referenced two DOT job titles, a registered nurse and a training representative. And the one thing that I would like the court to know is that Ms. Kay's actual occupation did not exist at the time that those DOT titles were developed. And also, Hartford did a search on job postings at Indeed.com, which is a job accumulator site, and used the occupational title of clinical product specialist. We have no idea what was resulted from that search, because it's not included in the record. There's no discussion of what she found from doing that search, so that's just a void that's in the record. And then Ms. Allen at Hartford went on to prepare a report of sorts that was ambiguous, and at the critical part where it discusses the physical duties of Ms. Kay's occupation, as performed in the general workplace, it literally fell off. It lists some lifting duties and it ends mid-sentence, where it says frequently and it stops. And that's at page 551 of excerpts of record. So one thing that's also important to note with respect to the occupation that Ms. Kay performed and the policy that her employer purchased to protect her was an own-occupation policy. And that own-occupation policy lasted until age 65, and I know that this court has probably seen a lot of occupational policies that the definition changes after 24 months from own-occupation to any occupation. In order for an employer to provide that type of policy to its employee, it costs more, the premium is higher. And then another thing that the employer specifically selected with these terms was that Ms. Kay Kay's work hours were specifically insured, meaning that there are a lot of disability policies that limit you to 40 hours per week, even though there are a lot of occupations where people work more than 40 hours per week. In this instance, Candela, for its employees, basically insured her hours for however many hours she worked, which initially in the file Hartford acknowledged could be up to 18 hours a day and on a given day. And so, basically what Hartford did by not even considering her hours and the judge by not considering her hours is they rewrote the policy, and under ERISA, that's something that you're not allowed to do. So let me ask you this. So what do you see as the most serious error by the district court? I believe the most serious error by the district court, it begins, it starts initially with failing to augment the administrative record. At the outset. At the outset, based on the procedural irregularities. Now, let me ask you this. If we were to agree with you on that, and I don't mean to suggest that anybody does, I'm just trying to figure, I just want to look ahead a little bit. What is the relief you're seeking? The relief that we're seeking is for this court to reverse the district court and to reinstate her benefits. Ms. Kaye has been without her benefits for six years. This is an own occupation. Oh, let me ask you this. So if we say that the district court erred or abused its discretion in denying the motion to augment the record, doesn't that mean it has to go back to the district court to augment the record? Not necessarily. And to then proceed? Not necessarily, because I think what the court has before it, based on all the errors that were committed, even at the trial of this case, the court can look at those, the information that was submitted, and the court can easily, this court, can reverse based on what the materials that should have been considered by the court. And also, this court can reverse alone based on the judge's statement that she was disabled from her job, but not from her occupation. He bought, basically, what she said. She believed, he bought her pain complaints. He said he found them credible. He believed what Dr. Dodge said. And so, based on those statements, in addition to the information that demonstrates what her occupation actually consisted of in the general workforce that was provided, would have been provided had the record been augmented, this court can absolutely reverse the district court and reinstate her benefits that she's been without since 2016. And I want to also point out that when the Hartford issued their initial decision on July 15, 2016, they denied her benefits back to June 30th, which makes no sense. So your point you're making, I gather, Ms. Martin, is that there was an adequate review of the medical records, but it was, it's defective in the sense that it did not include consideration of augmenting the record as well as the definition of the occupation. Precisely. Precisely, Your Honor. And so the other thing that, you know, we cite these, this is what we call in our brief a quintet of cases, and I know that those are out-of-circuit cases, but we feel that those cases kind of, kind of represent how the Ninth Circuit has treated ERISA cases in the sense that we do believe that the Ninth Circuit is, it's very important that, you know, the whole point of a pillar of ERISA is to allow this fulsome administrative process where you cannot basically ambush a claimant on appeal, which is precisely what happened here. And the court didn't recognize that because really of an erroneous reading of Midget was argued, which is an out-of-circuit case, which does not represent the law of the Ninth Circuit. The district court misapplied Saloma. Just so many things happened, and another thing that's frustrating about the decision on appeal is that Hartford, for the first time, raises this job versus occupation analysis. They could have raised that on the initial decision. That wasn't some new argument that didn't exist based on some new information that was provided. That could have always been argued, but Hartford did not make that argument until on appeal when it literally ambushed Ms. Kay with that. And then when her, and what would have been a normal procedure is for Hartford to have offered an appeal to her, recognizing that the basis of the decision had changed, but it didn't do that. Then when Ms. Kay's attorney came in and said, you know, will you please consider this information, Hartford rejected that. Essentially, then, your point, I gather, was also that Abate, the Abate decision in 2006 by this court that addressed a plan administrator violating, I think it's Section 1333 of ERISA, would apply here, and that the district judge essentially caused that violation to occur by not permitting her to augment the record. Precisely. Yes, Your Honor. Okay. And I also, I just . . . Ms. Martin, did you want to save some time for rebuttal? Oh, I do. Please, Your Honor. Okay. Thank you. You can keep going, but . . . Oh, okay. I just want to let you know, you're down to three minutes and 47 seconds. Yes, yes. Okay. Actually, no, I will wait. Okay. Okay. Thank you. Thank you. All right. Thank you. Mr. Decker. Thank you. Thank you, Your Honor. I think it's really important to go back to, and step back and look at what the Supreme Court has said repeatedly about ERISA and its underlying purposes. ERISA is this huge balancing act which Congress enacted in order to make sure people get the benefits that they're promised without discouraging employers who don't have to offer any benefits whatsoever from offering them in the first place. And the way that that is done is by sticking to the provisions of the plan and making sure that the administrator's responsibilities are those that are set forth in the plan or by the statute and in supplementing regulations. So that the liabilities are predictable and the system is efficient and uniform. And critical to sticking to the plan is the proof provisions in the plan, both under Muniz and the plan itself. A fundamental tenet of ERISA jurisprudence is that the claimant always, always, always has the burden of proving her claim. And we get to these cases and invariably what we hear are burden shifting type of arguments, which is exactly what we have here in front of you. And I think adopting those arguments really would significantly impair ERISA's interests here. In terms of the motion to augment, Your Honor, the proper standard that you're applying is the Mongoluzo-Peta-Kirini standard. That is, what is the scope of evidence on de novo, not deferential, but de novo review? And the distinction is really important. The standard is there has to be exceptional circumstances to do that. It can't be evidence that could have been submitted during the administrative process, evidence that's just better than what they could have submitted before. It has to be evidence that is needed for an adequate de novo review. Can I ask why would there, if there were procedural irregularities here, as in when we're reviewing for abuse of discretion, I just don't understand why that wouldn't trigger the ability to augment. That seems to follow naturally, doesn't it? No, and Your Honor, I'm not meaning to suggest otherwise. If there is a violation of the regulations that has a causal nexus to an incomplete record or a record that was not adequate, that could provide a basis to augment. What I am saying is that you need to remember that what the deferential review courts are doing is fundamentally different. And in these cases, Abadi, Safon, all these cases, what you're doing is you're reviewing de novo the entire record to determine on a Glenn Abadi multifactorial test of procedural and substantive requirements. Can we sustain this? Can we affirm it? And if not, what's the remedy going to be? And you're doing that on a de novo basis. Right, but maybe just address then your opponent's point that there was a pretty serious procedural irregularity when the insurer really did shift the basis for its denial, especially with respect to the description of her occupation. That did seem to be new. And she then simply wanted a chance to respond to that and was basically cut off from doing so. I guess I just don't see how that's fair. And then when she gets to the district court, she's told, no, you're not going to be able to augment the record. That just doesn't seem fair here. A couple of things here, Your Honor, on the, again, it's important, on the right to review and respond, again, the Silver case is the one where this court was doing exactly what it's doing now. So in that context, it's more relevant than Salome. And the Silver court expressly rejected this argument for very good reasons, that you needed this additional evidence or that there was some procedural problem with the way that the court handled it. So Salome, again, on deferential review, it doesn't discuss in specifics what the regulations actually require, which, I mean, it cited the regulations, it cited a case from the Eighth Circuit that had been interpreting prior regulations and had been abrogated, but the regulations, H-2-triple-I, and the language of that regulation specifically says upon request, you get these things upon request under the old regulations. Now the new regulations, they've changed that. So these folks, they're all set, but under the old regulations, which you are governed by here, you can only get that upon request. And there was no such request here. There was no articulation of a request here. And that's the relevant determination. The plaintiff in Salome made the request. The lawyer said it. Mr. Decker, if I can just follow up on Judge Watford's question. You're contending that OBATE applies only on an abuse of discretion review, correct? In the sense that, I mean, the point is, is that OBATE held that an administrator who made that decision violates ERISA's full and fair review rights, and de novo review applies in the event of a procedural violation, does it not? Well, there's de novo review anyways, Your Honor. I don't think that's what OBATE can do. Well, just let me follow up if I can, because as I understand it, the district court acknowledged in the record that Hartford changed its definition of Kay's essential duties in its appeal by enlisting her duties with Candela, the employer, in its termination letter, while resting on a Kay report in the denial. And in fact, later, the district court adopted Hartford's definition, specifically saying that Allen's report is the only vocational evidence in the record. Well, that's true, because Ms. Kay was not allowed to introduce other items. And essentially, effectively, she was sandbagged. Was she not? Absolutely not, Your Honor. How can the district court note that the Allen report, you know, produced by Hartford, is the only vocational evidence in the record, and if that's the case, that it's the only vocational evidence in the record, how is she not prejudiced by the fact that she was not given an opportunity here for full and fair review and response? So again, Your Honor, the opportunity is upon request, which she never made, first of all. Second of all, the facts of a body are fundamentally different than this case. In a body, the court initially, the administrator initially made the decision that they were going to deny based on no application being submitted. And then they entirely shifted to a whole new reason. The person was not disabled. That person had no ability to present evidence about her disability. That is a fundamental sandbag. In this case, there's always going to be differences of factual findings. I mean, I'm really concerned, Your Honor, that the court not adopt this view of what is a new rationale in such a broad way that every single thing that comes out of the administrator's mouth on the final denial, a factual difference, there's always going to be factual differences. Well, let me focus on that, if I can. Just hold up for a minute here. It's not often that I get a lawyer talking more quickly than I do, but you may have succeeded in doing that, so I always pay deference to people who talk quickly because I do. But I really, I think, but so we both have that tendency. But the two new reports that were offered by Hartford, one of them is an occupational report that determined Kay's essential duties in the sense of the general workplace. The point that Ms. Martin was raising is that in terms of the proper construction of occupation in a general workplace, there's no specific Ninth Circuit authority, but there's abundant authority by other circuits. I think it's four other circuits that have clearly held that that must be of the same general character, meaning that in this case, when this woman had to travel 80 percent of the time, that to just get a definition off of the Internet in terms of general workplace, clearly there is authority in four other circuits that indicate that there has to be an occupation of the same general character, and that was, she was not given the opportunity to do that here. Your Honor, so again, a couple of things. Those cases are absolutely the opposite. The Kinsler case involved no definition of the term regular occupation. It was a completely different type of policy. The Doe case involved a specialty definition of occupation. It had to be a specific type of lawyer. The Lassner case, again, no definition of regular occupation. These cases are all fundamentally the opposite. Well, wait a minute. Wait, if I can, if I can. The Kinsler case, which I think is the Second Circuit case, specifically had the same kind of analysis with respect to a nursing director for a rehabilitation center, and the Seventh Circuit reversed holding that the insurer erred by crafting a definition of a regular occupation and failed to account for the fact that the duties of a director of nursing at a small health care agency are distinguished from a large general purpose hospital. That's the exact same kind of specific analysis in terms of the nature of her occupation, which seems to cry out in this case is that there was literally total non-consideration of the fact that very fundamental to this woman's occupation was traveling 80 percent of the time, and she clearly has a health issue that would preclude that. So I don't see how you say the Kinsler case is so distinguishable. It was the exact same kind of specific analysis of the nature of her occupation and her employment specifically as to her job. One, Your Honor, the definition of occupation was different. There was no such definition. It didn't say it is as performed in the general workplace. That's a critical, critical distinction. Two, Your Honor, the occupational analysis did take into account her specific job duties. I mean, you can see it in the analysis. I mean, it's a type of analysis that courts have approved numerous times, analysis of the DOT. Third of all, Your Honor, even in the supplemental materials that Ms. Kay tried to submit to the court, there's nothing in there that talks about the occupation in the general workplace. It's all specific to Candela. Fifth, I think, Your Honor, the restrictions and limitations that the district court adopted, which she had clear discretion to do, gave her no such restrictions and limitations on sitting, standing, or walking. And that's, your review of that is under the clearly erroneous standards. She can travel, even though, again, this is real burden flipping here. It's plaintiff's burden to demonstrate she can't do the occupation in the general workplace. She provided no evidence, no evidence. To Mr. Decker, okay, we got that point. Let me ask you a question, Mr. Decker. So is it your position, well, I can't, maybe I better not frame it that way, did the insurer change the rationale when they denied the appeal? No, Your Honor. So in your view, there was no new rationale was given as a basis for the appeal denial, the final denial? That's right. I mean, like I said, you're always going to have differences in fact finds because they have to follow the evidence. Okay, so if I go back again and take another hard look at the original denial when she submitted her application, then she appealed, and then there was a new decision, according to your argument, I'm not going to see any fundamental difference in rationale. You shouldn't see, Your Honor, again, I think that is defining this way too, way too broadly. There's always going to be factual distinctions. As this court held in the Beach case, when the plaintiff made the exact same argument and said, hey, Liberty made some different factual arguments on the uphold, and that's always going to be the case. It's always going to be the case. It's fundamentally different than what happened to a body, and fundamentally different than what happened to a court case. Okay, okay. Let me just take this one step further. Now, I don't want to speak, I'm not speaking for anybody and even myself, because I'm not sure how I'm coming out on this case yet. But assuming that we were to disagree with you about what happened at the administrative level, what would be the remedy? I think the only remedy you could do was a remand to the district court. You sit here on a clearly erroneous standard. I mean, that is the remedy that the courts took in Mongoluzo and took in all the cases that are cited. Otherwise, you are potentially providing benefits. No, I'm not talking about providing. So I gather if we were to disagree with you and say that there was a new rationale that was offered in the appeal denial, and therefore there was procedural error, and the district court denied her motion to augment the record, I mean, there might be an abuse of discretion. I'm not sure I understand the significance of that, and again, Well, then the motion that was offered at the beginning of, at the outset of the proceedings to augment the record, probably should have been granted under those circumstances. Well, then I don't think you should rule that way, but if you do, you would order the district court to consider those things, although you can, you can see that there is nothing in there that demonstrates she's disabled from her, from her regular occupation in the general workplace. Again, the vocational, she submitted some brochures of other laser companies that say that they have heavy equipment. Well, let me just follow up, if I can follow up on Judge Pius's question, assuming that there was a remand, the district court would have the opportunity to perhaps give additional consideration to the definition of occupation, and perhaps consider the four circuits, including the Kinstler case, and Laco, and there's other cases in terms of consideration for the job, the same general character, it would be up to the district court to then consider that, isn't that correct? I think the court did consider that, and correctly distinguished those cases, which were not which are not applicable, because they all contain different language, they all contain different, different language, as I've indicated. Those cases, again, they don't define regular occupation as in the general work workplace, and I certainly hope that the district court would, wouldn't want to adopt that erroneous rationale. Okay. All right. Mr. Decker, you're over your time, so thank you. Thank you, Your Honor. Okay. Let's, Ms. Martin, you had about three and a half minutes. One thing I would like to talk to, again, is the remedy that we're seeking, which is reversal of the district court. It would be unconscionable to send this case back to the judge, given what Ms. Kay has already been put through in terms of the failings with the Hartford during the administrative process, and then, again, at the court level, I mean, this is a six-year process. These benefits are designed to help pay someone's bills, and she has been deprived of them. All we're asking is that her, that the court be reversed, and that her benefits be reinstated to the present, and then I just wanted to speak real quickly to the idea of the burden. Yes, the burden at the trial court was on Ms. Kay, but that does not alleviate Hartford of its fiduciary obligations that it had with respect to investigating every possibility. They have a fiduciary obligation to Ms. Kay, which means that they were to put her interests before their own and to help her perfect her claim, and that was simply not done here, and if anything, they put up roadblocks that prevented Ms. Kay from perfecting her claim, and that is just not what ERISA is about, and then one other thing I wanted to comment on about the supplemental materials that Ms. Kay produced, she produced job descriptions from the major companies that were performing the same type of work that Ms. Kay was doing. Laser work, aesthetic equipment, training, those types of materials, those materials are not just brochures of a company that show they have heavy equipment. It showed that they had, they were the other major companies in the same marketplace that had serious travel requirements as well, some of them greater than what Candela had, and unless the Court has any further questions for me, then I would like to just submit, please. Thank you. Okay. Thank you very much. Thank you. Thank you, Counsel. We appreciate your arguments this morning. The matter is submitted at this time.
judges: PAEZ, WATFORD, Bennett